FISHER, Circuit Judge,
dissenting:
I respectfully disagree with my colleagues in the majority. I believe the Service erred both as a matter of law, applying the wrong standard to assess whether Western Watersheds showed “marked separation” between the interior mountain quail proposed as a distinct population segment (DPS) and other populations, and as a matter of fact, wrongly stating that Western Watersheds had not presented information showing ecological differences between the interior and other mountain quail populations. I would therefore reverse.
This case is controlled by the standard of proof Western Watersheds had to meet in its petition for listing the interior mountain quail population as a DPS: “substantial scientific or commercial information indicating that the petitioned action may be warranted.” 16 U.S.C. § 1533(b)(3)(A) (emphasis added). We review the Service’s 90-day Finding to determine whether it is “arbitrary and capricious,” but this necessarily requires that we take into ac *609 count whether the Service applied the correct legal standard in making its decision. See Sierra Club v. Marsh, 816 F.2d 1876, 1384 (9th Cir.1987). I believe the Service acted arbitrarily and capriciously in determining that Western Watersheds did not show that listing the interior mountain quail as a DPS may be warranted.
A proposed DPS is discrete if it is “markedly separated from other populations of the same taxon as a consequence of physical, physiological, ecological, or behavioral factors.” Policy Regarding the Recognition of Distinct Vertebrate Population Segments, 61 Fed.Reg. 4,722, 4,725 (Feb. 7, 1996). The Service stated the standard correctly at one point in its 90-day Finding, but found that Western Watershed “did not provide substantial information ... to demonstrate that the populations of mountain quail along the western border of the proposed DPS are physically isolated from nearby eastern populations in Oregon and Nevada.” 90-day Finding for a Petition To List the Mountain Quail as Threatened or Endangered, 68 Fed. Reg. 3000, 3003 (Jan. 22, 2003) [hereinafter 90-day Finding] (emphasis added). The Service continued, “[n]o physical barrier appears to exist that would preclude the movement of birds across this landscape....” Id. This analysis seriously overstates the DPS standard: whether the populations of quail are “physically isolated” rather than “markedly separated.” Cf. Nat’l Ass’n of Home Builders v. Norton, 340 F.3d 835, 841 (9th Cir.2003) (“To determine whether the agency action was arbitrary and capricious, we must decide whether the agency considered the relevant factors .... ” (quotations omitted)). Moreover, the Service further erred by taking an absence of proof of complete separation as dispositively justifying its refusal to list the proposed DPS. The Service’s own past decisions illuminate the error, because the Service has previously found marked separation even though limited contact between different populations was possible. See Final Rule Designating the Northern Rocky Mountain Population of Gray Wolf as a Distinct. Population Segment and Removing This Distinct Population Segment From the Federal List of Endangered and Threatened Wildlife, 73 Fed.Reg. 10,514-01 (Feb. 27, 2008) (finding the proposed wolf population discrete even though the only physical barrier between populations was hundreds of miles of unsuitable habitat and unconfirmed reports suggested individual wolves occasionally crossed it, noting that “DPS policy does not require complete separation of one DPS from other populations”); see also 90-day Finding on a Petition To List the Yellowstone National Park Bison Herd as Endangered, 72 Fed.Reg. 45,717, 45,718 (Aug. 15, 2007) (finding the bison herd discrete “because of physical- distance and barriers” even though on rare occurrences individual bison from another herd “have been known to migrate north into” the Yellowstone National Park herd); 12-Month Finding for a Petition To List the Lower Kootenai River Burbot as Threatened or Endangered, 68 Fed.Reg. 11,574, 11,577 (Mar. 11, 2003) (finding the burbot population discrete “as a consequence of physical ... factors” even though downstream movement by upper River burbot into the lower River burbot’s habitat was possible, noting that “DPS policy does not require absolute reproductive isolation as a prerequisite to recognizing a DPS”). Although the majority correctly identifies factual distinctions affecting other factors in previous Service decisions, those distinctions do not bear on the central issue of marked separation. The Service thus erred in two respects: first, by requiring Western Watersheds to show physical isolation rather than marked separation; and second, by concluding that the absence of *610 proof of physical isolation in Western Watersheds’ listing petition itself justified denying the petition.
Second, the Service erred in stating that “No information [was] presented in the petition, nor is any available in Service files, to indicate that any ... ecological differences between mountain quail that occur in the proposed DPS and those found outside of it.” 90-day Finding at 3004. The Habitat Conservation Assessment for Mountain Quail, for example, plainly contradicts this assertion, specifically stating that “habitats frequented by this quail in eastern portions of its range differ greatly from those inhabited in western or central portions.” (Emphasis added.) Unlike the majority, I fail to see how the Service’s “path” between “no information” and the Habitat statement “may reasonably be discerned.” Motor Vehicle Mfrs. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Indeed, by incorrectly stating that Western Watersheds had presented no evidence of ecological differences the Service “ignore[d] available biological information” and violated the requirement to base its determination on the best available science. See Kern County Farm Bureau v. Allen, 450 F.3d 1072, 1080 (9th Cir.2006).
Additionally, because the Service did not evaluate Western Watersheds’ ecological information and instead concluded that no significant ecological differences justified listing the proposed DPS, the Service should not be allowed now to justify its decision by arguing that the ecological habitats of mountain quail throughout the state are the same. Contrary to the majority’s assertion, the Service did not discuss and reject the ecological evidence. The Service cited two facts about the vegetative habitat in the “Background” portion of its Finding: that mountain quail live “in shrub-dominated communities that vai“y across habitat types throughout the range of the species,” and that “[i]n the drier eastern portions of its range, mountain quail are normally found in steeper slope areas along riparian corridors consisting of mountain and riparian shrub communities.” Id. at 3001 (emphasis added). Neither statement indicates that the Service found ecological consistency throughout the habitat, so the Service and its counsel may not present a new argument as support for the Service’s Finding. See SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); Railway Labor Executives’ Ass’n v. ICC, 784 F.2d 959, 969 (9th Cir.1986).
For all the above reasons, I would reverse the district court.